Good afternoon, your honors. My name is Jean Christensen. I'm here from Wigdore LLP together with my associate, Elizabeth Chen, and we represent the plaintiff appellant in this case, Elena Shultz. This case is fundamentally about a straightforward case about a female employee who became pregnant and decided to do the right thing and tell her employer that she was pregnant. The next thing Ms. Shultz finds out is that she's brought into a meeting with her superiors and informed abruptly that her position has suddenly been being terminated was based on her pregnancy, and she had many good reasons to believe that was so. At that point in time, which was July 21st, 2015, she had a viable cause of action against her employer for pregnancy discrimination. Unfortunately, the district court ruled that although Ms. Shultz was terminated on July 21st, the subsequent conduct of the congregation somehow vitiated or expunged the actual termination that had taken place on July 21st. Well, suppose on July 22nd, the congregation's administrator consulted a lawyer and the lawyer said, you can't do that. You can't fire someone who's pregnant because they got pregnant. So stop. And she then, the administrator, immediately notified Ms. Shultz that the termination was rescinded. At that point in time, Your Honor, again, that would only go to what extent they mitigated their damages, because had Ms. Shultz called me up on the night of July 21st, I could have prepared an EEOC charge for her at that time. So regardless of what the congregation did the following day, two weeks later, a month later, those are all facts that are part of the analysis to what extent they mitigated their damages. There might be no damage or minimal damages, but the cause of action accrues as of the time that someone is notified that she's fired. Correct. And I think the Supreme Court cases on this issue are perfectly clear. The court itself even cited to Green v. Brennan in its decision, but the point at time when she had a viable cause of action is when the decision was made to terminate her. If she would be held to that, if she filed a lawsuit eventually or filed an EEOC charge 300 days or whatever it is after August 14th, but within 300 days after August 14th, but more than 300 days from July 21st, she would be time barred. Under the existing Supreme Court law, that's correct. So you're abandoning the August 14th date. I think at some point, somewhat inconsistently, you argue that the adverse employment action occurred as of August 14th, the date that her termination became effective. We argued in the alternative that she was constructively discharged on the 14th. I agree that there should have been more consistency with the way we characterized the actual termination in our papers and in the argument, because the way the complaint was pleaded, she was terminated on July 21st. Then she remained working at the congregation they had asked her to, and she felt obliged, which we also included as part of the facts. My position is she could have left on the 14th. She could have left a week before that. She could have left a week later. She had that date in her mind, because that was the date that was given to her. Is there a reason that you didn't avail yourself of the opportunity provided by the district judge to replead? Yes. And file an amended complaint? Yes. I'm glad you asked that, because I felt that we had argued and we had more than sufficiently pleaded her fundamental claim under Title VII that there wasn't anything more I could say about the termination that happened on July 21st. There's plenty more I could have said about the subsequent reoffer and whether or not it was reasonable, but that was a separate analysis that seemed to just keep getting conflated with the first part of what had happened. And without discovery, which I believe we are more than entitled to, there is not many more facts surrounding the date of the termination I could have added. At some point, you also argue that there is a hostile work environment for the rather short period between when she is reinstated or maybe from the day that she was first fired and the date of August 14th, right? Correct. So that's a separate contention. And you're arguing in the alternative, I suppose, that if we disagreed with you about the termination date, that there is still a constructive discharge based on behavior that occurred after that. Is that a fair way of characterizing your argument? That's fair. That's correct. I think that we pleaded already, compared to many complaints that we filed, we already had an abundance of facts that did show the treatment that she experienced both after the July 21st date, significantly after they received our demand letter, and then what followed was that she, rather than the congregation treating her any differently, they continued to treat her in the same way, if not more so. But on your theory, that all would also go to what would be an obstacle to you, even if you're right about the termination date, which is mitigation of damages, in effect. If she was offered, stay on, we changed our minds, work here as long as you'd like, and she walks away, either that terminates the running of damages or she'd have to have some reasonable reason for declining. Correct. I believe we more than sufficiently pled facts that if believed to be true, that not only was she terminated, that after that decision was made and she objected to the treatment, there would have been more discrimination. I guess one thing that wasn't apparent, and I think the district judge pointed out, was that you didn't plead facts regarding the difference in treatment before the termination vis-a-vis her interaction with the supervisor and the board member and the rabbi. You talked about, or you pled facts about, after the alleged rescission. Correct. I would say that what we did allege was that she was one of the longest tenured employees at the congregation, which we did allege, with a stellar performance record. So everything she had done up to that point was fine. There had been no issues with her performance. And then suddenly, a day after she tells them she's pregnant, they decide that she's terminated. And so, because those were the same superiors that she had reported to for all that time, there was no explanation for this new treatment, but for the fact that they disapproved of her pregnancy. A quick question on the hostile work environment claim. That's a separate claim, right? It's part of, it's a lesser included component of a Title VII discrimination claim with a constructive discharge. So you're not asking us to address this for the first time on appeal? No. We argued, I mean, we alleged the facts that showed that she experienced a hostile work environment, both from the point in time that they discovered that she was pregnant after they received our letter, at which point they knew she was not going to agree to the severance agreement, and that the hostile work environment just intensified after that time. And as I said previously, she could have, if it was severe enough, which the district court never even considered the fact that she had been terminated on July 21st when it analyzed the hostile work environment. If we agreed with you that the cause of action is final and accrues when someone is told you're fired, and that you've stated enough to make a claim that this firing was based on pregnancy discrimination, or state a plausible claim to that effect, are you asking us to do anything more at all than simply to vacate the decision and remand to the district court on the ground that you stated a claim for a firing, a discriminatory firing? And then if later you want to amend your complaint or whatever happens, happens with mitigation of damages, with hostile work environment or whatever else, are you asking us to address any of that? Yeah. Well, I am asking for the entire decision to be reversed because once the district court determined that the firing was vitiated, all of the subsequent causes of action were minimized because the court took the July 21st events out of the equation, and then without that use the other facts that were alleged in the complaint about her interaction with her superiors, et cetera, to decide whether or not there were any other causes of action pled. So you want us to also address whether five days of not being talked to nicely by your boss is enough to state a hostile work environment claim? Well, I would say that it was more than five days because we alleged that they discriminated against her from initially, but that if the court needs to review her pleadings, considering the light most favorable to Ms. Schultz and not to impose its own judgment, which it clearly had to in order to arrive at this decision, that she was in fact terminated and that subsequent conduct did not expunge the termination. And if that means that the other causes of action are, you know, that's the first issue that has to be addressed, which I think it does under their reasoning, then obviously that's what we're asking for. Thank you. You've reserved some time. Thank you. Good afternoon, Your Honors. I'm Vince Avery. I'm here with my colleague, Sarir Silver from Ackerman LLP on behalf of the appellees. I would like to use this time to address the most prominent issue and discrepancy before this court, which is partly factual based on the allegations in the complaint and partly legal based on the court's decision in Green v. Brennan. And that's really when does the cause of action accrue and when there is in fact a cause of action. Now, Plaintiff's Counsel cites Green v. Brennan for the proposition that a cause of action accrues upon an employee providing notice or notice of termination. Well, Green v. Brennan actually stated, was it, first it dealt with an issue between when does a cause of action accrue for statute of limitations purposes, providing notice of a resignation or the actual resignation itself. And in that case, it actually held for, as a factual matter, because the facts in that case didn't involve providing advance notice, that it accrued when the actual resignation took place. However, the judge, Justice Sotomayor, wrote towards the end of her decision addressing the concurring opinion's concerns, that if an employee were to provide notice two weeks in advance of his resignation and then subsequently resign, that the statute of limitations would occur from the date on which notice was given. However, and this is the key piece here, that court did not hold that providing notice of your intent to resign somehow negates the requirement that you actually have to resign. It didn't say that an employee, for instance, because a cause of action for statute of limitations purposes accrues on the notice date, that an employee can say, I'm tendering my resignation and it's going to be effective in two weeks. But if a cause of action accrues, you can file a suit, can't you? That's the whole point of saying the cause of action accrues. As Ms. Christensen said, a complaint could have been filed the next day. Could it not? Actually, no, Your Honor. The cause of action, if the plaintiff, for instance, in this hypothetical that we're talking about, if an employee were to say, I'm resigning in two weeks from today. She's been resigning. She's being fired. I understand. But it's because of the Green's decision set, it actually works both ways, and I'll explain why. If she says, I'm resigning in two weeks, and then the next day changes her mind and says, I'm not resigning, what she'd be arguing is saying that employee who nevertheless remains employed could file a claim for constructive discharge because at one point she gave notice to resign and changed her mind. That's the same thing for a termination, where the rescission actually takes place. But constructive discharge is all about conditions were so bad that I had to leave. If you decided you didn't have to leave, that kind of undercuts that claim. Okay. And I understand that that would actually address sort of the second component of it, and this is why actually it's dangerous to take statute of limitations case law and apply it strictly to an adverse employment action inquiry. There actually was a case recently in the Eastern District of Michigan that addressed this issue, and it wasn't obviously decided because it was a 2017 February case of Harnisky v. Michigan-Belco, 2017 U.S. District Lexus 26791. And in that case, and I think the court's point on this is what I'm trying to articulate, the plaintiff cited Green v. Brennan for the proposition that an employee's claim accrues upon the employee giving notice of intent to resign. Putting aside that Green dealt with statute of limitations issue, plaintiff had mischaracterized the court's holding. The court held that the 45-day clock for constructive discharge began running only after the employee resigns. Therefore, contrary to the assertion of the plaintiffs, the employee needs to actually resign rather than giving definitive notice for a claim of constructive discharge. In the Green v. Brennan case, the court actually held for that plaintiff that the date of accrual was the date of her actual resignation. What you're telling us in one sense is we're not really controlled by the Supreme Court decision. There are other Supreme Court decisions about tenure which I think are also distinguishable, and there are district court decisions that go in various ways. So we have to decide this for ourselves. So is your argument that we should be encouraging employers to be willing to change their minds, that if you get a lawyer's letter that says you're discriminating and you shouldn't, and employer consults a lawyer, and the lawyer says you should stop this, rehire that person, you're not allowed to do what you did. We should be encouraging employers to take that action and to reinstate the employee, and therefore we should not recognize an adverse employment action when someone is just told they're fired? Is that the heart of the argument? That is a major policy point behind the argument. I think everything that Your Honor just said is accurate, that I do think that part of the policy behind Title VII is to encourage employers to comply with the law, and holding that employer who makes a decision and subsequently changes his mind and wouldn't want to self-correct and... I hear that, but of course Ms. Christensen would surely say they already have that incentive based on the mitigation of damages point, but someone is harmed, are they not? When they're told, we don't want black people around here anymore, you're fired. But you have to keep working for two weeks because we need you for two more weeks. If the person needs the paycheck and stays on for those two weeks, you're saying they have not been harmed when they were told they were fired for a reason that is discriminatory? In that hypothetical in which an employee is told you are going to be fired in three weeks and then is subsequently told, never mind, you're not going to be fired, everything we said essentially before, you're staying on the exact same position, and there was no time period between those two communications in which the employee stopped working, lost any pay, she just went about her day the exact same as she always would, and she wouldn't be... Just went about her day the same as she always does. Under the feeling that I'm losing my health insurance even though I'm pregnant, I have to start looking for a new job, my life is in turmoil, that doesn't matter if two weeks later you're told, forget about it, it's all right, we've changed our mind. What I'm saying, Your Honor, is the way that you're classifying it as essentially, the way I'm understanding it, is sort of an emotional stress from being told you're fired and really that would be it. That has never been recognized by a court as solely grounds for cause of action. And that's the exact reason why every circuit that addresses it... What if she hired a headhunter or something and spent money in between the time she's told she's fired and when she has to leave, and thus she incurred economic loss? She did buy health insurance. She... She did buy health insurance and I believe she was fired. Your Honor, our health insurance was continued and this was... Right, but she bought... She chose to buy her own and have secondary coverage. She had the same exact health insurance on July, August, September, October. Her health insurance was not terminated even after August, so... Are you saying that an employer can say to an employee, you are terminated, but your effective date is two years from now, and in the meantime, that employee can't bring an action for discrimination as of the date she's fired, that the claim doesn't accrue on the date she receives notice of her termination? Your Honor, that's... There's two questions and I don't want to let the earlier one pass, so I'll address that one first and then the earlier one. But the employer itself did determine that she was terminated on July 21? No. Well, your letter, in which you purportedly rescinded, referred to the termination of July 21. Your Honor, she was provided notice on... If that was the case, she wouldn't have continued working on July 22nd and every day between that and the letter. I was told you're terminated, but we want you on until August 14th. Right. So she was advised that she was terminated effective August 14th with no change in her pay, job dues, or anything else, benefits, or any other material term or condition of her employment between July 21st and August 5th. Had she pled that, this wouldn't be the same case. And actually, to address your earlier question about whether they had incurred expenses with a headhunter, if that was pled in the complaint, then that might actually amount to essentially saying that this notice coupled with this harm that I suffered amounts to an adverse employment action. And I just want to, before my time runs out, address this because it's the emotional distress component in the way that counsel is phrasing this as a mitigation principle. Mitigation, the reason it's mitigation when it's done after the adverse employment action. So for instance, in all the cases that dealt with a terminated employee who a year later is actually, the termination is, she's offered her same job back and they give her back pay. The courts have held that that would mitigate all back pay but wouldn't negate the adverse employment action. And the reason why is it actually goes to the same policy behind prejudgment interest on back pay. And it's because the employee loses the use of the compensation, the use of her wages during that time period. So yeah, you've given her back pay but she wasn't able to use it for that year and that's actually the harm for which she's suing. Everything else is mitigated. In this case, that's not, that, her pay was never docked. She never went one day without pay. We're talking about an employer who said, you are, you're terminated in three weeks. And then changed his mind. Would you be inclined to walk away on July 22nd? If she had walked away? I'm not going to take this, I'm leaving. Would your position be she hasn't suffered any adverse employment action at all? She's just voluntarily resigned. That's her problem. Actually, I think the case would be slightly different but I do think that it would create a different issue. And I think if she had stepped away on July 22nd, we would really be talking about if we had still, again, sent the letter on August 5th, then this would be a strict mitigation case. And I do think she would also alternatively plead that the constructive discharge must have been based on stuff that was, I guess, pre-dating that July 21st. Just the termination. Just the being told I'm fired. Why do I need to work here for three weeks if you don't want to, for your benefit, why can't I get on about my life and go find another job? I mean, in other words, the question is, is this, you're fired, prospectively, an adverse employment action in itself? I think that's the question we're trying to get at. Yes. I think that is the actual question that we're trying to get at and I agree wholeheartedly. I do think that if she's told you're fired and then she said, I'm not staying any longer, I'm going home, then that, yes, she'd be terminated. The question would be strictly a mitigation. But that's not what happened here. She did retain work and it's not just for the employer's benefit. She continued to remain compensated. She was still being paid. She still had health insurance. Those are actual material benefits and that's the standard in Title VII. So she was working at an accelerated level and alleged that she was training others to take over her function, which goes to her argument or her allegation that this was not a bonafide rescission or even a bonafide offer of reemployment because the employer was preparing other employees to take over for her. The one thing I would like to clarify that, because that was raised in her reply brief really, the allegation that she was asked to perform her normal job test, not a different job test, but at an accelerated rate does exist in the complaint and whether we dispute it or not is not in question. It's strictly true. But, right, exactly. But what's not is training other employees. There's not an allegation that we hired some new employee that she was asked to train. That is a line in her reply brief, but there was no employee that was never alleged. The only thing that really pertains to that time period between the rescission and August 14th is the accelerated job duties. And there are cases that say that that alone doesn't give rise to a viable constructive discharge claim on the one hand. And two, that alone wouldn't create an issue to where, for purposes of really the rescission, which already occurred, being bonafide and in good faith. Because the reason where that standard comes up, being bonafide and in good faith, is based on whether the employee has a reasonable right to reject an offer on the table after her employment's ended. And in effect, an employer says, we'll hire you back a year later or a day later. And the question is whether they have a right to reject that offer. And one of the factors in that is whether it's bonafide and made in good faith. That inquiry doesn't turn on the desire or the intent of the employer. What it turns on is whether the offer was to the same position. So for instance, if she had alleged something like actually the Miano, I believe is how you pronounce that case, which is discussed in both of our briefs, that she was rescinded but her job title had changed and the employer actually wasn't going to keep her around. And there were allegations that she overheard that one of the managers was saying something to the effect of, we'll just put her in a desk in the corner and she's not going to do any tasks. Then that would be a valid, those would be valid allegations that would go to whether it's bonafide, but she doesn't allege that. But she did allege that part of her duties, she was directed to report directly to some of these individuals who refused to look at her or speak with her. That is in the complaint. That part is in the complaint, but what she's saying is I would have to report to the people that I believe terminated me, right, for an unlawful reason, but that wasn't changed. It's not alleged that that would be a new- Right, so if she had alleged facts that at least two of the three named defendants never even spoke to me or looked at me. Yet she alleges I did have to report to some of the individuals as part of her duties. The fact that she didn't allege that previously prior to her termination that she did report and they still shunned her even before she told them of her pregnancy, that would be- No, no, I apologize if that was confusing. What I'm saying is actually somewhat different. If she had alleged I was reporting to John Smith prior to my announcement of my pregnancy, but after they rescinded my termination, they said I have to report to the three people in the termination meeting. That would be a change in the reporting structure which would raise questions as to whether or not it was actually the same position that she was being put in, but none of that's in the complaint. And that's actually what the district court judge notes that in the decision saying that's what's absent. That's why the case was dismissed below. And the judge in doing so said by giving what was essentially a fifth opportunity to replete, because this is already the third amended complaint, saying you can add additional facts. Those are presumably the facts that he was looking for. And- Is it any part of your argument that there, from what you were saying before, that there needs to be economic damage for there to be a cause of action for adverse employment actions? Not necessarily. Not necessarily, but in circumstance, because really then what we're saying here, there is the hostile work environment claim- Yeah, no, I know that. That's where the economic damage is. Yeah. But if someone were demoted, you used to be a supervisor, and now you're told you can't be a supervisor anymore, but you're still getting the same rate of pay. We'll pay you as a supervisor, but you're stripped of all your supervisory duties, that would be an adverse employment action, right? Correct. And the damage would be the dignitary or psychological harm that is incurred, wouldn't it? Correct. So why isn't it the same thing if you're told you're fired as of three weeks from now? Why isn't that already the same kind of adverse employment? It's not the same job if it's not a job that you're expected to be able to continue until some future point when something changes, as it is when it's the same duties but under a death sentence. Okay, the reason for the difference, and there's a bunch of case law on this, and because obviously this isn't a job reassignment, that's not in the brief, but I'm sure plaintiff's counsel are aware as this court is. There's a bunch of cases that do talk about specifically when a job reassignment or job change in duties or stripping of supervisory functions. Qualify as stand alone adverse employment action. Those cases don't, however, say, and not one of them, and actually these are, and this goes to the heart of this case, because a lot of these are cited in our brief. Those cases don't say that being told that you're going to be reassigned your job duties, and then you object, and they say, never mind, we're not going to reassign you. That merely being advised of a change that would constitute an adverse employment action stands alone by itself. Why isn't firing different? There are a number of these district court cases that were cited that are things like, you're told there's going to be a letter put in your file, and then it isn't. And I can certainly see an argument, well, that's pretty at the borderline of what's an adverse employment action in the first place, and it never really happened. It's kind of no harm, no foul. But I'm still puzzled as to why being told that as of three weeks from now, you're out of a job, is not a fairly dramatic thing to tell an employee in this kind of environment. Such that that alone should count as an adverse employment action. Because, for two reasons, one is, there were cases, obviously, as Your Honor is aware in our briefing which plaintiff's counsel addressed in their reply that deal with termination. Our briefing included a range of cases both in the district court. These are just exemplars of things we might want to consider in drafting a rule. We're not bound by any of them. Right, no, of course, of course, of course, right. But what I think is notable is there is, if this court were to adopt that position, that would be a first, and of which I'm aware in any circuit. Of which being- Is there any case that says explicitly in any circuit the opposite? That would be a first if we said the opposite, too, wouldn't it? No, Your Honor. Is there a circuit case that says if you are notified that you're fired effective three weeks from now, and then within that three weeks you're told forget it, that that is not an adverse employment action? Yes, Your Honor. Which one is that? It's not, they begin on page 17. I believe those cases are actually on page 18 of my brief, so I can bring it out right now and give you the citation. Okay, you've got the, just, that's fine. You've cited some on page 18, we'll look at them. Right. They're actually, I apologize, they are on page 17. The site continues into 18, but the Sixth Circuit. There's an 11th Circuit case you cited. A Fifth Circuit case that actually says, nor, quote, nor even the proposed notice of firing constitutes an actionable injury. And in that case granted, sorry, judgment on the grounds that there was no adverse employment action for that reason. And there's the 11th, 6th, and 5th. Those are the circuit courts that address that. Thank you. I've given you extra time, of course, and I will also give extra time to Ms. Christensen. Thank you. Thank you, Your Honor. I'd like to just address this, go back to the first point that we discussed, which seems to continue to get lost once we start discussing about all of these summary judgment decisions that other courts made. And in fact, some of those cases were decisions after trials about whether or not it was reasonable for the employee to reject the re-offer. That's what those cases were about, is that we keep losing sight of the fact that there is harm when an employer discriminates against an employee, and that's exactly what happened to Ms. Schultz. It's sad that in this day and age, a pregnant woman still has to be concerned about notifying her employer about her status. But what's worse is the congregation and even the district court, nobody has acknowledged the fact that she was in fact discriminating. She is alleging that she was discriminated based on her status as a pregnant woman, and that there is harm inherent in that act of discrimination, and that is why she has a viable cause of action on July 21st. Ms. Cushington, to pursue what I think is one of your concerns, let us assume that you prevail here. You're prepared to make the argument that there are material issues of fact and apparently you would be interested in discovery. And is there anything else that this court could possibly do other than to vacate the judgment and remand for further proceedings, which would include discovery? Well, I believe that if the lower court is instructed that Ms. Schultz should not be required to prove her case at this stage without the opportunity to even find out what the defendant's proffered explanation is for what presumably they will say was a non-discriminatory act. I mean, we haven't gotten to that point, and that- Well, that's what's drawing my attention. It seems to me listening to both that, I'm not sure this is my final view of the matter, but it seems to me that you would benefit from having a record on which, presumably, the congregation would then move for summary judgment, or you would move for summary judgment. Correct. I mean, I think, and that's why all of the cases that are cited, even by the district court, were all summary judgment cases, and some were motions taken after full jury trials. Because these are material facts in dispute. And whether or not, obviously the congregation disputes whether she was ever fully terminated on that day. But viewed in the light most favorable to Ms. Schultz, if this complaint taken as true, she has pled an action for discrimination and for harm. Without going into detail, she did, in fact, hire a lawyer, because that's part of the complaint. She didn't hire a headhunter, but she did retain our firm, and we did perform work for her before that August 14th date. And so, and she did purchase medical insurance thinking she was out of a job, and here she was pregnant, and she had to take care of herself. And you can tell from the facts that even at the meeting, that this was not a decision that was maybe not going to happen. She specifically said to them, what am I going to do? I'm already showing nobody's going to hire me. And how am I going to get health insurance? This wasn't an event that she thought might happen. It happened that day, and we pled that. And I think the district court erred by deciding on its own, that even if she had been terminated on that day, the conduct, just as alleged in the motion to dismiss by the congregation, somehow provided the congregation with a second bite of the apple. And it's wrong, there's no case law to support it. I disagree with counsel's representation that there's cases that say that because they don't. And we are entitled to a record, and Ms. Schultz is entitled to explore her complaint. And if on summary judgment, the defendants want to raise this issue again, then it should be decided then or before a jury. Thank you. Are they still sending her checks, or did that stop at some point? That stopped, finally. Thanks, Ms. Grisham. Thank you. Thank you. We'll reserve the decision.